| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ronald Appel, Esq.  SBN: 132023<br>APPEL & APPEL<br>2522 Chambers Road<br>Tustin, CA 92780<br>(714) 573-4090<br>attorneyrappel@gmail.com<br><br><br><br><br><br>☐  *Movant appearing without an attorney*<br>☒  **Attorney for Movant** | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

</div>

| In re:<br>Veerkamp, Linda M | CASE NO.: 2:23-bk-17901-VZ<br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 03/12/2024<br>TIME: 10:00 AM<br>COURTROOM: 1368 |
| Debtor(s). | |
| **Movant:** Farmers and Merchants Bank of Long Beach | |

1. **Hearing Location**:

   ☒  255 East Temple Street, Los Angeles, CA 90012      ☐  411 West Fourth Street, Santa Ana, CA 92701
   ☐  21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐  1415 State Street, Santa Barbara, CA 93101
   ☐  3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 02/06/2024

APPEL & APPEL
_____
Printed name of law firm (if applicable)

Ronald Appel, Esq.
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                    Page 2                    F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

      *Street address*: 18320 Regina Ave
      *Unit/suite number*:
      *City, state, zip code*: Torrance, CA 90504

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __A___ ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*) __11/29/2024__ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☐ Other (*see attached continuation page*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017    Page 3    F 4001-1.RFS.RP.MOTION

    (3) ☒ *(Chapter 12 or 13 cases only)*

        (A) ☐ All payments on account of the Property are being made through the plan.
            ☒ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

        (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

    (4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

    (5) ☐ The Movant regained possession of the Property on *(date)* _____,
        which is ☐ prepetition ☐ postpetition.

    (6) ☐ For other cause for relief from stay, see attached continuation page.

  b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

  c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

  d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

**5.** ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

  a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

  b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

  c. ☐ Other *(specify)*:

**6.** **Evidence in Support of Motion: (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

  a. The REAL PROPERTY DECLARATION on page 6 of this motion.

  b. ☐ Supplemental declaration(s).

  c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit B____.

  d. ☐ Other:

**7.** ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                   Page 4                         **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☐ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 02/06/2024

APPEL & APPEL

Printed name of law firm (if applicable)

Ronald Appel, Esq.

Printed name of individual Movant or attorney for Movant

_____

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) James Ketchersid _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a. ☐ I am the Movant.

    b. ☒ I am employed by Movant as (*state title and capacity*):
       Senior Vice President

    c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (*see attached*):

3. The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed alonges/indorsements, is attached as Exhibit _D_.

    b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c. ☐ Servicing agent authorized to act on behalf of the:

       ☐ Holder.
       ☐ Beneficiary.

    d. ☐ Other (*specify*):

4. a. The address of the Property is:

       *Street address*: 18320 Regina Ave
       *Unit/suite no.*:
       *City, state, zip code*: Torrance, CA 90504

    b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
                    See attached Exhibit "A"

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

a. ☐ Debtor's principal residence    b. ☐ Other residence
c. ☐ Multi-unit residential    d. ☐ Commercial
e. ☐ Industrial    f. ☐ Vacant land
g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

a. ☒ Sole owner

b. ☐ Co-owner(s) (*specify*):

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☐ The Debtor ☐ did ☐ did not list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit C____.

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
attached as Exhibit D____.

c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 250000.00 | $ 251869.98 | $ 251869.98 |
| b. | Accrued interest: | $ 7323.04 | $ 5492.28 | $ 12815.32 |
| c. | Late charges | $ 243.40 | $ 121.70 | $ 365.10 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ 3500.00 | $ 3500.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $ 268550.40 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
has occurred*):

a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: 11/04/2024 .
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 4 | 4 | $ 1830.76 $60.85 | $ 7566.44 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 3 | 2 | $ 1830.76 $60.85 | $ 5613.98 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:           $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:           $ 3500.00
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:           $[                    ]

   TOTAL POSTPETITION DELINQUENCY:           $ 16680.37

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $ 1830.76 will come due on 03/01/2024 , and on
the 1st day of each month thereafter. If the payment is not received by the 15th day of the month, a late
charge of $60.85 will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
        Chapter: _____   Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

      2. Case name: _____
        Chapter: _____   Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
        Chapter: _____   Case number: _____
        Date dismissed: _____   Date discharged: _____   Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/06/2024 | James Ketchersid | |
| --- | --- | --- |
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 11                          F 4001-1.RFS.RP.MOTION

EXHIBIT A

## LEGAL DESCRIPTION

Lot 37 of Tract 15933, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in book 347, pages 38 and 39 of maps, in the office of the Los Angeles Recorder.

EXHIBIT B

Fill in this information to identify your case:

| Debtor 1 | Linda M. Veerkamp | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number  **2:23-bk-17901**
(if known)

☐ Check if this is an amended filing

## Official Form 106D
# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>if any |
|---|---|---|---|---|
| **2.1** **Farmers and Merchants Bank** | Describe the property that secures the claim: | **$259,000.00** | **$1,200,000.00** | **$0.00** |
| Creditor's Name | 18320 Regina Ave. Torrance, CA 90504  Los Angeles County | | | |
| 302 Pine Ave, Long Beach, CA 90802 | As of the date you file, the claim is: Check all that apply. | | | |
| Number, Street, City, State & Zip Code | ☐ Contingent | | | |
| | ☐ Unliquidated | | | |
| | ☐ Disputed | | | |
| Who owes the debt? Check one. | Nature of lien. Check all that apply. | | | |
| ■ Debtor 1 only | ☐ An agreement you made (such as mortgage or secured car loan) | | | |
| ☐ Debtor 2 only | | | | |
| ☐ Debtor 1 and Debtor 2 only | ☐ Statutory lien (such as tax lien, mechanic's lien) | | | |
| ☐ At least one of the debtors and another | ☐ Judgment lien from a lawsuit | | | |
| ☐ Check if this claim relates to a community debt | ☐ Other (including a right to offset) | | | |

Date debt was incurred _____    Last 4 digits of account number _____

Debtor 1    **Linda M. Veerkamp**
    First Name       Middle Name         Last Name

Case number (if known)    **2:23-bk-17901**

| 2.2 | **Ronald Pearlstein Profit Sharing** | Describe the property that secures the claim: | $418,869.66 | $1,200,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**Plan Entrust #00393
c/o Danco
2476 Overland Ave.,
Suite 203
Los Angeles, CA 90064**

Number, Street, City, State & Zip Code

18320 Regina Ave. Torrance, CA
90504  Los Angeles County

As of the date you file, the claim is: Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☐ Other (including a right to offset) _____

Date debt was incurred _____

Last 4 digits of account number _____

Add the dollar value of your entries in Column A on this page. Write that number here: **$677,869.66**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here: **$677,869.66**

## Part 2: List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]
Name, Number, Street, City, State & Zip Code
**Western Fidelity Trustees
1222 Crenshaw Blvd., Suite B
Torrance, CA 90501**

On which line in Part 1 did you enter the creditor? **2.2**

Last 4 digits of account number ___

EXHIBIT C



**This page is part of your document - DO NOT DISCARD**





# 20160553072

Pages:
0015

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/13/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 100.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 100.00 |



LEADSHEET



201605130130016

00012088120



007552141

SEQ:
28

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

R09

05/13/2016

*20160553072*

ORR

WHEN RECORDED MAIL TO:
Farmers and Merchants Bank of Long Beach
Attn: Lending Records
PO Box 21337
Long Beach, CA  90801-4337

2630010725    90-270-0273-8

4084-016-013

FOR RECORDER'S USE ONLY

## DEED OF TRUST

### Variable Interest Rate

### Revolving Line of Credit

THIS DEED OF TRUST is dated May 4, 2016, among LINDA VEERKAMP, A SINGLE WOMAN, whose address is 18320 REGINA AVENUE, TORRANCE, CA  90504 ("Trustor"); Farmers and Merchants Bank of Long Beach, a CA Corp, whose address is Torrance Office, 22400 Hawthorne Blvd, Torrance, CA  90505 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Farmers and Merchants Trust Company of Long Beach, A California Corporation, whose address is PO Box 891, Long Beach, CA  90801 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in LOS ANGELES County, State of California:

LOT 37 OF TRACT NO. 15933, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 347, PAGES 38 AND 39 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

The Real Property or its address is commonly known as  18320 REGINA AVENUE, TORRANCE, CA  90504. The Assessor's Parcel Number for the Real Property is 4084-016-013.

REVOLVING LINE OF CREDIT.  This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Credit Agreement.  Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total amount of the Credit Agreement.  The unpaid balance of the revolving line of credit under the Credit Agreement may at certain times be Zero Dollars ($0.00).  A zero balance does not affect Lender's agreement to make advances to Trustor under the Credit Agreement.  Therefore, Lender's interest under this Deed of Trust will remain in full force and effect notwithstanding a zero balance on the Credit Agreement.  Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other

**DEED OF TRUST**

Loan No: 16033151                          **(Continued)**                          Page 2

charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release

**DEED OF TRUST**
**Loan No: 16033151** (Continued) Page 3

occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge

**DEED OF TRUST**

**Loan No: 16033151**                    **(Continued)**                    Page 4

of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Trustor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests,

**DEED OF TRUST**
**(Continued)**

Loan No: 16033151                                                                                   Page 5

encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**DEED OF TRUST**
**(Continued)**

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred

**DEED OF TRUST**

Loan No: 16033151                           (Continued)                           Page 7

═══════════════════════════════════════════════════════════════════════════════════

to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense.  For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen:  (A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Trustor's income, assets, liabilities, or any other aspects of Trustor's financial condition.  (B)  Trustor does not meet the repayment terms of the Credit Agreement. (C)  Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together.  An election by Lender to choose any one remedy will not bar Lender from using any other remedy.  If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed of Trust, the Credit Agreement, other documents requested by Trustee, and all documents evidencing expenditures secured hereby.  After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu

Loan No: 16033151

**DEED OF TRUST**
**(Continued)**

Page 8

of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor

also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of LOS ANGELES County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**FLOOD INSURANCE POLICY REVIEW.** If a private flood insurance policy is obtained to meet flood insurance requirements at any time during the term of the Note, a fee may be charged to review the policy. A fee may also be charged in connection with renewals and/or changes to the policy.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**DEED OF TRUST**
(Continued)

Loan No: 16033151

Page 10

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Farmers and Merchants Bank of Long Beach, a CA Corp, and its successors and assigns.

**Borrower.** The word "Borrower" means LINDA VEERKAMP and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated May 4, 2016, **with credit limit of $250,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Loan No: 16033151**

**DEED OF TRUST**
**(Continued)**

Page 11

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Farmers and Merchants Bank of Long Beach, a CA Corp, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Farmers and Merchants Trust Company of Long Beach, A California Corporation, whose address is PO Box 891, Long Beach, CA  90801 and any substitute or successor

**DEED OF TRUST
(Continued)**

Loan No: 16033151

Page 12

trustees.

**Trustor.** The word "Trustor" means LINDA VEERKAMP.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE CREDIT AGREEMENT SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
LINDA VEERKAMP

14

Loan No: 16033151

**DEED OF TRUST**
**(Continued)**

Page 13

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _California_                                          )
                                                              ) SS
COUNTY OF _Los Angeles_                                       )

On _May 4_ _____, 20_16_ before me, _Matthew Kakada Somm_

Notary Public                                    (here insert name and title of the officer)

personally appeared **LINDA VEERKAMP,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MATTHEW KAKADA SOMM
COMM. # 2056089
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES JAN. 27, 2018

Signature _____

(Seal)

15

Loan No: 16033151

**DEED OF TRUST
(Continued)**

Page 14

(DO NOT RECORD)

**REQUEST FOR FULL RECONVEYANCE**

(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____     Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 15.5.20.036   Copr. D+H USA Corporation 1997, 2016.   All Rights Reserved.   - CA
L:\HARLAND\CFI\LPL\G01.FC TR-20870 PR-83

EXHIBIT D

# EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $250,000.00 | 05-04-2016 | 05-04-2026 | 16033151 | | | NSS | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** LINDA VEERKAMP
18320 REGINA AVENUE
TORRANCE, CA 90504

**Lender:** Farmers and Merchants Bank of Long Beach, a CA Corp
Torrance Office
22400 Hawthorne Blvd
Torrance, CA 90505

**CREDIT LIMIT: $250,000.00** **DATE OF AGREEMENT: May 4, 2016**

**Introduction.** This EquityLine Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Farmers and Merchants Bank of Long Beach, a CA Corp. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," "Beneficiary," and "Lender" mean Farmers and Merchants Bank of Long Beach, a CA Corp. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay Farmers and Merchants Bank of Long Beach, a CA Corp, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until May 4, 2026 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on the later of May 9, 2016 or the recording of the Deed of Trust (the "Effective Disbursement Date") and will continue as follows: for a period of one hundred and twenty (120) months, not to exceed the maturity date. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES** or $100.00, whichever is greater. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. **Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon payment, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.**

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to Finance Charges, then to Late Charges, then to Unpaid Principal, and then to Other Fees and Charges.

**Receipt of Payments.** All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement. If a payment is made consistent with our payment instructions but received after 5:00 P.M. Pacific Time on a business day, we will apply your payment to your Credit Line on the next business day.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Two Hundred Fifty Thousand & 00/100 Dollars ($250,000.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "EquityLine Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you **acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

**Requests By Mail.** Requesting an advance by mail.

## EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

**Loan No: 16033151** (Continued) Page 2

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor EquityLine Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the EquityLine Check.

**Post-dated Checks.** Your EquityLine Check is post-dated. If a post-dated EquityLine Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your EquityLine Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your EquityLine Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the EquityLine Check.

**Transaction Violation.** Your EquityLine Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the EquityLine Check.

If we pay any EquityLine Check under these conditions, you must repay us, subject to applicable laws, for the amount of the EquityLine Check. The EquityLine Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return EquityLine Checks along with your periodic billing statements; however, your use of each EquityLine Check will be reflected on your periodic statement as a credit advance. We do not "certify" EquityLine Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line EquityLine Check, Telephone Request, Request By Mail and In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and the writing of EquityLine Checks, requesting an advance by telephone, requesting an advance by mail and requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $250.00. This means any EquityLine Check must be written for at least the minimum advance amount.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on EquityLine Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost EquityLine Checks.** If you lose your EquityLine Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (562) 495-7710. You also can notify us at Farmers and Merchants Bank of Long Beach PO Box 21337, Long Beach, CA 90801.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated May 4, 2016, to a trustee in favor of us on real property located in LOS ANGELES County, State of California. That agreement contains the following due on sale provision: We may, at our option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without our prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in Real Property. However, this option shall not be exercised by us if such exercise is prohibited by applicable law.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances, and subtract any unpaid FINANCE CHARGES and any payments or credits. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL**

## EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

**Loan No: 16033151**                                          (Continued)                                          Page 3

PERCENTAGE RATE as follows. We start with an independent index which is the Prime rate as published in the Wall Street Journal (the "Index"). We will use the most recent Index value available to us as of the Opening Date to determine the Initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE. The next paragraph sets forth the method by which changes in the Index are applied to make any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute Index, which is beyond our control, after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs. Initially, during the discount period, we will reduce the total rate of the Index plus margin by the percentage shown herein.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily as changes to the Index are published in the Wall Street Journal. In no event will the Periodic Rate result in a corresponding ANNUAL PERCENTAGE RATE that is less than 4.750% or more than 18.000%, nor will the Periodic Rate or corresponding ANNUAL PERCENTAGE RATE exceed the maximum rate allowed by applicable law. Today the Index is 3.500% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

### Rates During the Discount Period

| Term of Discount Range of Balances | Discount Percentage | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| First 6 Payments | | | |
| All Balances | 0.250% | 4.750% | 0.01301% |

The term of the discount period is 6 Payments.

The term of the discount period may be extended as set forth below:

The Discount Percentage (Annual Percentage Rate Discount) will remain in effect for the first six billing cycles on your Account. However, if you take an advance of at least $25,000 at the time you open the Credit Line the Discount Percentage will stay in effect for the first 12 billing cycles. In addition, if you maintain a minimum average balance of at least $25,000 for the first 12 billing cycles as we reasonably determine, the discount period will be extended for an additional 12 billing cycles. After the end of the discount period your rate will adjust to the value described herein.

### Current Non-discounted Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.250% | 4.750% | 0.01301% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Forgo Rate Increases.** If we forgo an ANNUAL PERCENTAGE RATE increase, at the time of a later adjustment we may return to the full index value plus margin.

**Preferred Variable Rate.** The annual percentage rate under this Credit Line Account is a preferred variable rate which is subject to the following rules and provisions:

**Description of Event That Would Cause Lender to Increase the ANNUAL PERCENTAGE RATE.** The Preferred Variable Rate discount will be terminated if the automatic-payment arrangement from your designated checking or savings account (the "Designated Account") is discontinued by us or you for any reason, if any monthly payment is not made by automatic debit for any reason whatsoever, or if your Designated Account is closed.

**How the New Rate Will Be Determined.** As described above, the ANNUAL PERCENTAGE RATE under this Credit Line Account is variable based on the Index value plus a margin. Should the event described above occur, the ANNUAL PERCENTAGE RATE will be increased as follows: The margin added to the Index will be 0.500%, subject to any Discount Percentage described above.

**Rules.** The following rules relate to the termination of the preferred variable rate, including any fees that may be charged: If the discount is terminated you must re-apply and be approved for automatic payments in order for the discount to be re-established.

Conditions Under Which Other Charges May Be Imposed. You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $75.00 will be charged to your Credit Line at the following time: On each anniversary of your EquityLine beginning with the first anniversary.

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $12.00 when you request a stop payment on your account.

**Overlimit Charge.** Your Credit Line Account may be charged $50.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a EquityLine Check in excess of your available balance.

**Charge for Advance Less than Minimum.** Your Credit Line Account may be charged $15.00 if you request a credit advance for less than the minimum advance amount disclosed above, whether we decide to honor it or whether we refuse to honor it, unless applicable law requires a lower charge or prohibits any charge.

**Late Charge.** Your payment will be late if it is not received by 10 days following the "Payment Due Date" shown on your periodic statements. If your payment is late we may charge you 5.000% of the payment amount or $5.00, whichever is greater.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Return Item Fee. The amount of this other charge

## EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

Loan No: 16033151

(Continued)

Page 4

Is: 15.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance In one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any cornaker.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. You also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all EquityLine Checks and any other access devices. Any use of EquityLine Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of EquityLine Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all EquityLine Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Farmers and Merchants Bank of Long Beach, PO Box 21337 Long Beach, CA 90801.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

## EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

**Loan No: 16033151**                        (Continued)                                                    Page 5

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Reconveyance Fee.** When your Account is closed and paid in full, you will be required to pay a reconveyance fee. The amount of the fee is $45.00, but shall not exceed the maximum amount established by law at the time of reconveyance. In addition, you will be required to pay the fee for recording the reconveyance imposed by the county recorder's office.

**Rate Change.** Should the terms of the note indicate a rate change on a specific date, and that date falls on a weekend or holiday, the rate change will occur on the business day immediately preceding.

**LENDER'S EXPENDITURES.** Lender is permitted to make expenditures to facilitate collection of the credit line, as set forth in the Credit Agreement and the Related Documents. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Line Account from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness, and at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Line and be apportioned among and be payable with any installment payments to become due under the Credit Line; or (C) be treated as a balloon payment which will be due and payable upon maturity of the Credit Line Account.

**CREDIT LINE ACCOUNT PAYOFF REQUESTS.** We can immediately suspend additional extensions of credit from your Credit Line upon our receipt of a payoff demand. This means that you will not be able to obtain any advances under the Credit Line and any requests for credit advances will not be honored.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of California.

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

BORROWER:

X _____
LINDA VEERKAMP

## EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE

**Loan No: 16033151**                                (Continued)                                **Page 6**

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

      Farmers and Merchants Bank of Long Beach
      PO Box 21337
      Long Beach, CA  90801

or at the address listed on your bill.  Write to us as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

      Your name and account number.

      The dollar amount of the suspected error.

      Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then.  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent.  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LaserPro, Ver. 15.6.20.036  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - CA  C:\HARLAN\ENOF7CFLD\E8.FC  TR-20870  PR-89

# PAYMENT DEFERRAL AGREEMENT

### (Lender's Loan No. 90-270-0273-8)

THIS PAYMENT DEFERRAL AGREEMENT (the "Agreement"). is made as of August 10, 2021, by and among Linda Veerkamp ("Borrower"), and Farmers and Merchants Bank of Long Beach, a CA Corp ("Lender"), with reference to the following:

### RECITALS

A.        Lender has extended its loan number 90-270-0273-8 to Borrower in the original principal amount of $250,000.00 (the "Loan"). The Loan is evidenced by, inter alia, that certain EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE dated May 4, 2016 in favor of Lender in the original principal amount of $250,000.00 (the "Note"). The Note and all other documents evidencing, securing or guarantying the Loan are collectively referred to herein as the "Loan Documents".

B.        The Loan Documents are valid, binding and enforceable in accordance with their terms, and Borrower does not have any defense, claim or offset to its obligations to Lender under the Loan Documents.

C.        As of the date hereof, the unpaid principal balance of the Loan is $251,951.64 and there is accrued and unpaid interest owing to Lender under the Note in the amount of $813.36 and deferred interest in the amount of $12,681.90.

D.        Borrower has represented and warranted to Lender that she has been adversely impacted by COVID-19 and has experienced financial hardship as a result of this impact, making it difficult for Borrower to meet her payment obligations as and when due under the Note and the other Loan Documents.

E.        In an effort to accommodate Borrower, Lender hereby agrees to the terms and conditions more particularly set forth below.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AGREEMENT

1.    **Recitals.** The recitals are incorporated herein by this reference as are all exhibits. Borrower agrees and acknowledges that the factual information recited above is true and correct.

2.    **Payment Deferral.** Beginning with the Loan payment due on July 10, 2021, Borrower's regularly scheduled monthly payments under the Note shall be deferred in its entirety for a period of two (2) months (the "Payment Deferral Period"). Upon the end of the Payment Deferral Period and beginning with the Loan payment due on September 9, 2021, repayment terms will revert back to the Note's payment terms in effect directly prior to the Payment Deferral Period. Borrower may pay deferred amounts at any time during the term of the Loan.

3.    **Accrued and Unpaid Interest.** Borrower hereby acknowledges and agrees that all interest that accrues and remains unpaid during the Payment Deferral Period shall not be capitalized or added to the principal balance of the Loan, but instead shall remain due and payable by Borrower upon the earliest to occur of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise. Borrower may pay deferred amounts at any time during the term of the Loan.

4.    **Maturity Date.** The maturity date of the Loan is not being extended as a result of the Payment Deferral Period.

5.    **Priority of Lender's Security Interests.** Borrower agrees to fully cooperate with Lender in connection with obtaining any title insurance and any other action that may be undertaken by Lender in connection with this Agreement that Lender determines is or may be necessary to preserve the validity and/or priority of Lender's liens and/or security interests securing the Loan. Borrower further acknowledges and agrees that Borrower shall be responsible for any and all fees, costs and expenses (including attorneys' fees) incurred by Lender in connection with the foregoing, which shall be due and payable by Borrower to Lender upon the earlier of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise.

6.    **Reservation of Rights.** Borrower hereby acknowledges and agrees that the Payment Deferral Period is granted by Lender on a one-time basis and that Lender reserves the right to withhold its consent to any future request that Lender provide payment deferral or relief. Nothing herein shall be construed as a waiver of Lender's right to strictly enforce the terms of the Note and the other Loan Documents on and after the end of the Payment Deferral Period.

7.    **Continuing Validity.** Borrower acknowledges and agrees that, except as otherwise expressly provided in this Agreement, all terms, conditions and provisions of the Loan Documents shall continue in full force and effect, and remain unaffected and unchanged. This Agreement in no way acts as a release or relinquishment of, and in no way affects, the liens, security interests and rights created by or arising under the Loan Documents, or the priority thereof. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended in all respects. The Loan Documents, any other security for payment of the Note, and all rights, remedies, titles, liens and equities securing the Note as hereby modified and the indebtedness represented thereby are hereby recognized, renewed, extended and continued in full force and effect for the benefit of the holder of the Note and the indebtedness evidenced thereby. Except as specifically set forth in this Agreement, all rights and remedies of Lender are reserved.

8.    **Release.** In consideration of Lender's agreement to enter into this Agreement, Borrower hereby agrees as follows:

    a.    Borrower, on behalf of herself, and her successors and assigns (collectively the "Releasing Parties") hereby releases and forever discharges Lender and all of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, advisors, and its and their successors and assigns (collectively the "Released Parties") from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties may have or which may hereafter be asserted or accrue against Released Parties, or any of them, arising directly or indirectly out of the Loan, the Loan Documents, the transactions evidenced or contemplated thereby, the approval, the origination,

page 1

the funding and the closing of the Loan; the review, approval, or disapproval of any and all documents, instruments, insurance and all other items submitted to Lender in connection with the Loan; the disbursements of funds under the Loan; the modification of the Loan made pursuant to this Agreement; Lender's acts, statements, conduct, representations and omissions made in connection with the modification of the Loan, including, without limitation, the terms and conditions of this Agreement; any fact, matter, transaction or event relating thereto; or the relationships existing or transactions or dealings occurring between Lender and Releasing Parties up to and as of the date of this Agreement (the "Claims").

b.    The release described in the immediately preceding paragraph and in this paragraph applies to all Claims which the Releasing Parties have or which may hereafter arise against the Released Parties, or any of them, as a result of acts or omissions occurring before the date of this Agreement, whether or not known or suspected by the Parties hereto. Releasing Parties expressly acknowledge that, although it may be that ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, it has carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or Claims.

c.    Without limiting the generality of the foregoing, Releasing Parties expressly waive any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the releasing party does not know or suspect to exist in the releasing party's favor at the time of executing the release, which if known by the releasing party must have materially affected the releasing party's settlement with the released party. Further, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542, and any ordinances or statutory, regulatory, or judicially created laws or rules of any applicable jurisdiction which may provide, in substantive part, that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____ (INITIALS)

d.    This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released. Releasing Parties hereby acknowledge that it has not relied upon any representation of any kind made by Lender in making the foregoing release.

9.    **This Agreement One of the Loan Documents.** From and after the date hereof, this Agreement is and shall be deemed one of the Loan Documents. An event of default under this Agreement shall constitute an event of default under the Note and the other Loan Documents.

10.   **Termination.** Either party may terminate this Agreement upon written notice of termination to the other party at the address provided for in the Loan Documents. Upon termination of this Agreement, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period and Borrower shall remain obligated for payment of any and all fees, costs and/or expenses incurred by Lender in connection with this Agreement as provided above.

11.   **General.** Borrower shall execute such additional documents as Lender may require to fully effectuate the intent of this Agreement. If any action, suit or other proceeding is brought to enforce the obligations of Borrower under this Agreement, Lender shall be entitled to receive all of its costs and expenses of suit, including attorneys' fees, incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom. As used in this Agreement, attorneys' fees shall mean the full and actual cost of any legal services actually performed in connection with the matters involved, calculated on the basis of the usual fee charged by the attorneys performing such services, and may also include the allocable fees and costs of in-house counsel, and shall not be limited to "reasonable attorneys' fees" as defined in any statute or rule of court. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California (however, not to the exclusion of any applicable Federal law), without regard to state statutes or judicial decisions regarding choice of law questions.

12.   **Counterparts.** This document may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of a signature page to, or an executed counterpart of, this document by facsimile, email transmission of a scanned image, DocuSign, or other electronic means, shall be effective as delivery of an originally executed counterpart. The words "execution," "signed," "signature," and words of like import in this document shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity, or enforceability as a manually executed signature or the use of a paper-based record keeping system, as the case may be, to the extent and as provided for in any applicable law, including, without limitation, Electronic Signatures in Global and National Commerce Act, the California Uniform Electronic Transaction Act any other similar state laws based on the Uniform Electronic Transactions Act or the Uniform Commercial Code, and the parties hereto hereby waive any objection to the contrary.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND BORROWER AGREES TO THE TERMS OF THIS AGREEMENT.

BORROWER:

_Linda Veerkamp_ (signature)
Linda Veerkamp
8-31-2021

2 pages Total

3694583.4 | 07R531-0010                          2                          page 2

DocuSign Envelope ID: 2BF25FB5-EE79-4C57-9A7A-DD9A60B240DF

# PAYMENT DEFERRAL AGREEMENT

## (Lender's Loan No. 90-270-0273-8)

**THIS PAYMENT DEFERRAL AGREEMENT** (the "<u>Agreement</u>"), is made as of **April 26, 2021**, by and among Linda Veerkamp ("<u>Borrower</u>"), and Farmers and Merchants Bank of Long Beach, a CA Corp ("<u>Lender</u>"), with reference to the following:

### RECITALS

A.        Lender has extended its loan number **90-270-0273-8** to Borrower in the original principal amount of **$250,000.00** (the "<u>Loan</u>"). The Loan is evidenced by, <u>inter alia</u>, that certain **EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE** dated **May 4, 2016** in favor of Lender in the original principal amount of **$250,000.00** (the "<u>Note</u>"). The Note and all other documents evidencing, securing or guarantying the Loan are collectively referred to herein as the "<u>Loan Documents</u>".

B.        The Loan Documents are valid, binding and enforceable in accordance with their terms, and Borrower does not have any defense, claim or offset to its obligations to Lender under the Loan Documents.

C.        As of the date hereof, the unpaid principal balance of the Loan is **$251,869.98** and there is accrued and unpaid interest owing to Lender under the Note in the amount of **$325.34** and deferred interest in the amount of **$9,802.95**.

D.        Borrower has represented and warranted to Lender that she has been adversely impacted by COVID-19 and has experienced financial hardship as a result of this impact, making it difficult for Borrower to meet her payment obligations as and when due under the Note and the other Loan Documents.

E.        In an effort to accommodate Borrower, Lender hereby agrees to the terms and conditions more particularly set forth below.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AGREEMENT

1.    **Recitals.** The recitals are incorporated herein by this reference as are all exhibits. Borrower agrees and acknowledges that the factual information recited above is true and correct.

2.    **Payment Deferral.** Beginning with the Loan payment due on **April 9, 2021**, Borrower's regularly scheduled monthly payments under the Note shall be deferred in its entirety for a period of **three (3) months** (the "Payment Deferral Period"). Upon the end of the Payment Deferral Period and beginning with the Loan payment due on **July 9, 2021**, repayment terms will revert back to the Note's payment terms in effect directly prior to the Payment Deferral Period. Borrower may pay deferred amounts at any time during the term of the Loan.

3.    **Accrued and Unpaid Interest.** Borrower hereby acknowledges and agrees that all interest that accrues and remains unpaid during the Payment Deferral Period shall not be capitalized or added to the principal balance of the Loan, but instead shall remain due and payable by Borrower upon the earliest to occur of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise. Borrower may pay deferred amounts at any time during the term of the Loan.

4.    **Maturity Date.** The maturity date of the Loan is not being extended as a result of the Payment Deferral Period.

5.    **Priority of Lender's Security Interests.** Borrower agrees to fully cooperate with Lender in connection with obtaining any title insurance and any other action that may be undertaken by Lender in connection with this Agreement that Lender determines is or may be necessary to preserve the validity and/or priority of Lender's liens and/or security interests securing the Loan. Borrower further acknowledges and agrees that Borrower shall be responsible for any and all fees, costs and expenses (including attorneys' fees) incurred by Lender in connection with the foregoing, which shall be due and payable by Borrower to Lender upon the earlier of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise.

6.    **Reservation of Rights.** Borrower hereby acknowledges and agrees that the Payment Deferral Period is granted by Lender on a one-time basis and that Lender reserves the right to withhold its consent to any future request that Lender provide payment deferral or relief. Nothing herein shall be construed as a waiver of Lender's right to strictly enforce the terms of the Note and the other Loan Documents on and after the end of the Payment Deferral Period.

7.    **Continuing Validity.** Borrower acknowledges and agrees that, except as otherwise expressly provided in this Agreement, all terms, conditions and provisions of the Loan Documents shall continue in full force and effect, and remain unaffected and unchanged. This Agreement in no way acts as a release or relinquishment of, and in no way affects, the liens, security interests and rights created by or arising under the Loan Documents, or the priority thereof. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended in all respects. The Loan Documents, and/or any other security for payment of the Note, and all rights, remedies, titles, liens and equities securing the Note as hereby modified and the indebtedness represented thereby are hereby recognized, renewed, extended and continued in full force and effect for the benefit of the holder of the Note and the indebtedness evidenced thereby. Except as specifically set forth in this Agreement, all rights and remedies of Lender are reserved.

8.    **Release.** In consideration of Lender's agreement to enter into this Agreement, Borrower hereby agrees as follows:

a.    Borrower, on behalf of herself, and her successors and assigns (collectively the "<u>Releasing Parties</u>") hereby releases and forever discharges Lender and all of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, advisors, and its and their successors and assigns (collectively the "<u>Released Parties</u>") from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties may have or which may hereafter be asserted or accrue against Released Parties, or any of them, resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, arising directly or indirectly out of the Loan, the Loan Documents, the transactions evidenced or contemplated thereby, the approval, the origination,

the funding and the closing of the Loan; the review, approval, or disapproval of any and all documents, instruments, insurance and all other items submitted to Lender in connection with the Loan; the disbursements of funds under the Loan; the modification of the Loan made pursuant to this Agreement; Lender's acts, statements, conduct, representations and omissions made in connection with the modification of the Loan, including, without limitation, the terms and conditions of this Agreement; any fact, matter, transaction or event relating thereto; or the relationships existing or transactions or dealings occurring between Lender and Releasing Parties up to and as of the date of this Agreement (the "Claims").

b.    The release described in the immediately preceding paragraph and in this paragraph applies to all Claims which the Releasing Parties have or which may hereafter arise against the Released Parties, or any of them, as a result of acts or omissions occurring before the date of this Agreement, whether or not known or suspected by the Parties hereto. Releasing Parties expressly acknowledge that, although it may be that ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, it has carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or Claims.

c.    Without limiting the generality of the foregoing, Releasing Parties expressly waive any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the releasing party does not know or suspect to exist in the releasing party's favor at the time of executing the release, which if known by the releasing party must have materially affected the releasing party's settlement with the released party. Further, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542, and any ordinances or statutory, regulatory, or judicially created laws or rules of any applicable jurisdiction which may provide, in substantive part, that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____ (INITIALS)

d.    This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released. Releasing Parties hereby acknowledge that it has not relied upon any representation of any kind made by Lender in making the foregoing release.

9.    **This Agreement One of the Loan Documents**. From and after the date hereof, this Agreement is and shall be deemed one of the Loan Documents. An event of default under this Agreement shall constitute an event of default under the Note and the other Loan Documents.

10.   **Termination**. Either party may terminate this Agreement upon written notice of termination to the other party at the address provided for in the Loan Documents. Upon termination of this Agreement, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period and Borrower shall remain obligated for payment of any and all fees, costs and/or expenses incurred by Lender in connection with this Agreement as provided above.

11.   **General.** Borrower shall execute such additional documents as Lender may require to fully effectuate the intent of this Agreement. If any action, suit or other proceeding is brought to enforce the obligations of Borrower under this Agreement, Lender shall be entitled to receive all of its costs and expenses of suit, including attorneys' fees, incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom. As used in this Agreement, attorneys' fees shall mean the full and actual cost of any legal services actually performed in connection with the matters involved, calculated on the basis of the usual fee charged by the attorneys performing such services, and may also include the allocable fees and costs of in-house counsel, and shall not be limited to "reasonable attorneys' fees" as defined in any statute or rule of court. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California (however, not to the exclusion of any applicable Federal law), without regard to state statutes or judicial decisions regarding choice of law questions.

12.   **Counterparts.** This document may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of a signature page to, or an executed counterpart of, this document by facsimile, email transmission of a scanned image, DocuSign, or other electronic means, shall be effective as delivery of an originally executed counterpart. The words "execution," "signed," "signature," and words of like import in this document shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity, or enforceability as a manually executed signature or the use of a paper-based record keeping system, as the case may be, to the extent and as provided for in any applicable law, including, without limitation, Electronic Signatures in Global and National Commerce Act, the California Uniform Electronic Transaction Act any other similar state laws based on the Uniform Electronic Transactions Act or the Uniform Commercial Code, and the parties hereto hereby waive any objection to the contrary.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND BORROWER AGREES TO THE TERMS OF THIS AGREEMENT.**

**BORROWER:**

DocuSigned by:

*Linda Veerkamp*    5/3/2021

X _____
C6B4A500FC40437...

**Linda Veerkamp**

DocuSign Envelope ID: ... -B6... -B7-BE...EC

# PAYMENT DEFERRAL AGREEMENT

### (Lender's Loan No. 90-270-0273-8)

THIS PAYMENT DEFERRAL AGREEMENT (the "Agreement"), is made as of **February 26, 2021**, by and among Linda Veerkamp ("Borrower"), and Farmers and Merchants Bank of Long Beach, a CA Corp ("Lender"), with reference to the following:

#### RECITALS

A.        Lender has extended its loan number **90-270-0273-8** to Borrower in the original principal amount of **$250,000.00** (the "Loan"). The Loan is evidenced by, inter alia, that certain **EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE** dated **May 4, 2016** in favor of Lender in the original principal amount of **$250,000.00** (the "Note"). The Note and all other documents evidencing, securing or guarantying the Loan are collectively referred to herein as the "Loan Documents".

B.        The Loan Documents are valid, binding and enforceable in accordance with their terms, and Borrower does not have any defense, claim or offset to its obligations to Lender under the Loan Documents.

C.        As of the date hereof, the unpaid principal balance of the Loan is **$251,087.56** and there is accrued and unpaid interest owing to Lender under the Note in the amount of **$289.42** and deferred interest in the amount of **$5,816.98**.

D.        Borrower has represented and warranted to Lender that she has been adversely impacted by COVID-19 and has experienced financial hardship as a result of this impact, making it difficult for Borrower to meet her payment obligations as and when due under the Note and the other Loan Documents.

E.        In an effort to accommodate Borrower, Lender hereby agrees to the terms and conditions more particularly set forth below.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

#### AGREEMENT

1.    **Recitals.** The recitals are incorporated herein by this reference as are all exhibits. Borrower agrees and acknowledges that the factual information recited above is true and correct.

2.    **Payment Deferral.** Beginning with the Loan payment due on **December 11, 2020**, Borrower's regularly scheduled monthly payments under the Note shall be deferred in its entirety for a period of **four (4) months** (the "Payment Deferral Period"). Upon the end of the Payment Deferral Period and beginning with the Loan payment due on **April 10, 2021**, repayment terms will revert back to the Note's payment terms in effect directly prior to the Payment Deferral Period. Borrower may pay deferred amounts at any time during the term of the Loan.

3.    **Accrued and Unpaid Interest.** Borrower hereby acknowledges and agrees that all interest that accrues and remains unpaid during the Payment Deferral Period shall not be capitalized or added to the principal balance of the Loan, but instead shall remain due and payable by Borrower upon the earliest to occur of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise. Borrower may pay deferred amounts at any time during the term of the Loan.

4.    **Maturity Date.** The maturity date of the Loan is not being extended as a result of the Payment Deferral Period.

5.    **Priority of Lender's Security Interests.** Borrower agrees to fully cooperate with Lender in connection with obtaining any title insurance and any other action that may be undertaken by Lender in connection with this Agreement that Lender determines is or may be necessary to preserve the validity and/or priority of Lender's liens and/or security interests securing the Loan. Borrower further acknowledges and agrees that Borrower shall be responsible for any and all fees, costs and expenses (including attorneys' fees) incurred by Lender in connection with the foregoing, which shall be due and payable by Borrower to Lender upon the earlier of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise.

6.    **Reservation of Rights.** Borrower hereby acknowledges and agrees that the Payment Deferral Period is granted by Lender on a one-time basis and that Lender reserves the right to withhold its consent to any future request that Lender provide payment deferral or relief. Nothing herein shall be construed as a waiver of Lender's right to strictly enforce the terms of the Note and the other Loan Documents on and after the end of the Payment Deferral Period.

7.    **Continuing Validity.** Borrower acknowledges and agrees that, except as otherwise expressly provided in this Agreement, all terms, conditions and provisions of the Loan Documents shall continue in full force and effect, and remain unaffected and unchanged. This Agreement in no way acts as a release or relinquishment of, and in no way affects, the liens, security interests and rights created by or arising under the Loan Documents, or the priority thereof. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended in all respects. The Loan Documents, any other security for payment of the Note, and all rights, remedies, titles, liens and equities securing the Note as hereby modified and the indebtedness represented thereby are hereby recognized, renewed, extended and continued in full force and effect for the benefit of the holder of the Note and the indebtedness evidenced thereby. Except as specifically set forth in this Agreement, all rights and remedies of Lender are reserved.

8.    **Release.** In consideration of Lender's agreement to enter into this Agreement, Borrower hereby agrees as follows:

a.    Borrower, on behalf of herself, and her successors and assigns (collectively the "Releasing Parties") hereby releases and forever discharges Lender and all of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, advisors, and its and their successors and assigns (collectively the "Released Parties") from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties may have or which may hereafter be asserted or accrue against Released Parties, or any of them, resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, arising directly or indirectly out of the Loan, the Loan Documents, the transactions evidenced or contemplated thereby, the approval, the origination,

the funding and the closing of the Loan; the review, approval, or disapproval of any and all documents, instruments, insurance and all other items submitted to Lender in connection with the Loan; the disbursements of funds under the Loan; the modification of the Loan made pursuant to this Agreement; Lender's acts, statements, conduct, representations and omissions made in connection with the modification of the Loan, including, without limitation, the terms and conditions of this Agreement; any fact, matter, transaction or event relating thereto; or the relationships existing or transactions or dealings occurring between Lender and Releasing Parties up to and as of the date of this Agreement (the "Claims").

b.   The release described in the immediately preceding paragraph and in this paragraph applies to all Claims which the Releasing Parties have or which may hereafter arise against the Released Parties, or any of them, as a result of acts or omissions occurring before the date of this Agreement, whether or not known or suspected by the Parties hereto. Releasing Parties expressly acknowledge that, although it may be that ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, it has carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or Claims.

c.   Without limiting the generality of the foregoing, Releasing Parties expressly waive any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the releasing party does not know or suspect to exist in the releasing party's favor at the time of executing the release, which if known by the releasing party must have materially affected the releasing party's settlement with the released party. Further, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542, and any ordinances or statutory, regulatory, or judicially created laws or rules of any applicable jurisdiction which may provide, in substantive part, that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____ (INITIALS)

d.   This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released. Releasing Parties hereby acknowledge that it has not relied upon any representation of any kind made by Lender in making the foregoing release.

9.   **This Agreement One of the Loan Documents**. From and after the date hereof, this Agreement is and shall be deemed one of the Loan Documents. An event of default under this Agreement shall constitute an event of default under the Note and the other Loan Documents.

10.   **Termination**. Either party may terminate this Agreement upon written notice of termination to the other party at the address provided for in the Loan Documents. Upon termination of this Agreement, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period and Borrower shall remain obligated for payment of any and all fees, costs and/or expenses incurred by Lender in connection with this Agreement as provided above.

11.   **General.** Borrower shall execute such additional documents as Lender may require to fully effectuate the intent of this Agreement. If any action, suit or other proceeding is brought to enforce the obligations of Borrower under this Agreement, Lender shall be entitled to receive all of its costs and expenses of suit, including attorneys' fees, incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom. As used in this Agreement, attorneys' fees shall mean the full and actual cost of any legal services actually performed in connection with the matters involved, calculated on the basis of the usual fee charged by the attorneys performing such services, and may also include the allocable fees and costs of in-house counsel, and shall not be limited to "reasonable attorneys' fees" as defined in any statute or rule of court. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California (however, not to the exclusion of any applicable Federal law), without regard to state statutes or judicial decisions regarding choice of law questions.

12.   **Counterparts.** This document may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of a signature page to, or an executed counterpart of, this document by facsimile, email transmission of a scanned image, DocuSign, or other electronic means, shall be effective as delivery of an originally executed counterpart. The words "execution," "signed," "signature," and words of like import in this document shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity, or enforceability as a manually executed signature or the use of a paper-based record keeping system, as the case may be, to the extent and as provided for in any applicable law, including, without limitation, Electronic Signatures in Global and National Commerce Act, the California Uniform Electronic Transaction Act any other similar state laws based on the Uniform Electronic Transactions Act or the Uniform Commercial Code, and the parties hereto hereby waive any objection to the contrary.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND BORROWER AGREES TO THE TERMS OF THIS AGREEMENT.**

**BORROWER:**

DocuSigned by:

_Linda Veerkamp_ 3/11/2021

X _____
C684A500FC40437...

**Linda Veerkamp**

# PAYMENT DEFERRAL AGREEMENT

### (Lender's Loan No. 90-270-0273-8)

THIS **PAYMENT DEFERRAL AGREEMENT** (the "<u>Agreement</u>"), is made as of **June 26, 2020**, by and among **Linda Veerkamp** ("<u>Borrower</u>"), and Farmers and Merchants Bank of Long Beach, a CA Corp ("<u>Lender</u>"), with reference to the following:

**RECITALS**

A.  Lender has extended its loan number **90-270-0273-8** to Borrower in the original principal amount of **$250,000.00** (the "<u>Loan</u>"). The Loan is evidenced by, <u>inter alia</u>, that certain **EQUITYLINE CREDIT AGREEMENT AND DISCLOSURE** dated **May 4, 2016** in favor of Lender in the original principal amount of **$250,000.00** (the "<u>Note</u>"). The Note and all other documents evidencing, securing or guarantying the Loan are collectively referred to herein as the "<u>Loan Documents</u>".

B.  The Loan Documents are valid, binding and enforceable in accordance with their terms, and Borrower does not have any defense, claim or offset to its obligations to Lender under the Loan Documents.

C.  As of the date hereof, the unpaid principal balance of the Loan is **$249,071.23** and there is accrued and unpaid interest owing to Lender under the Note in the amount of **$319.66**.

D.  Borrower has represented and warranted to Lender that she has been adversely impacted by COVID-19 and has experienced financial hardship as a result of this impact, making it difficult for Borrower to meet her payment obligations as and when due under the Note and the other Loan Documents.

E.  In an effort to accommodate Borrower, Lender hereby agrees to the terms and conditions more particularly set forth below.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**AGREEMENT**

1.  **Recitals.** The recitals are incorporated herein by this reference as are all exhibits. Borrower agrees and acknowledges that the factual information recited above is true and correct.

2.  **Payment Deferral.** Beginning with the Loan payment due on **June 9, 2020**, Borrower's regularly scheduled monthly payments under the Note shall be deferred in its entirety for a period of **six (6) months** (the "Payment Deferral Period"). Upon the end of the Payment Deferral Period and beginning with the Loan payment due on **December 9, 2020**, repayment terms will revert back to the Note's payment terms in effect directly prior to the Payment Deferral Period. Borrower may pay deferred amounts at any time during the term of the Loan.

3.  **Accrued and Unpaid Interest.** Borrower hereby acknowledges and agrees that all interest that accrues and remains unpaid during the Payment Deferral Period shall not be capitalized or added to the principal balance of the Loan, but instead shall remain due and payable by Borrower upon the earliest to occur of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise. Borrower may pay deferred amounts at any time during the term of the Loan.

4.  **Maturity Date.** The maturity date of the Loan is not being extended as a result of the Payment Deferral Period.

5.  **Priority of Lender's Security Interests.** Borrower agrees to fully cooperate with Lender in connection with obtaining any title insurance and any other action that may be undertaken by Lender in connection with this Agreement that Lender determines is or may be necessary to preserve the validity and/or priority of Lender's liens and/or security interests securing the Loan. Borrower further acknowledges and agrees that Borrower shall be responsible for any and all fees, costs and expenses (including attorneys' fees) incurred by Lender in connection with the foregoing, which shall be due and payable by Borrower to Lender upon the earlier of the full repayment of the Loan or the entire balance of the Loan becoming due and payable, whether as a result of maturity or otherwise.

6.  **Reservation of Rights.** Borrower hereby acknowledges and agrees that the Payment Deferral Period is granted by Lender on a one-time basis and that Lender reserves the right to withhold its consent to any future request that Lender provide payment deferral or relief. Nothing herein shall be construed as a waiver of Lender's right to strictly enforce the terms of the Note and the other Loan Documents on and after the end of the Payment Deferral Period.

7.  **Continuing Validity.** Borrower acknowledges and agrees that, except as otherwise expressly provided in this Agreement, all terms, conditions and provisions of the Loan Documents shall continue in full force and effect, and remain unaffected and unchanged. This Agreement in no way acts as a release or relinquishment of, and in no way affects, the liens, security interests and rights created by or arising under the Loan Documents, or the priority thereof. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended in all respects. The Loan Documents, any other security for payment of the Note, and all rights, remedies, titles, liens and equities securing the Note as hereby modified and the indebtedness represented thereby are hereby recognized, renewed, extended and continued in full force and effect for the benefit of the holder of the Note and the indebtedness evidenced thereby. Except as specifically set forth in this Agreement, all rights and remedies of Lender are reserved.

8.  **Release.** In consideration of Lender's agreement to enter into this Agreement, Borrower hereby agrees as follows:

a.  Borrower, on behalf of herself, and her successors and assigns (collectively the "<u>Releasing Parties</u>") hereby releases and forever discharges Lender and all of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, advisors, and its and their successors and assigns (collectively the "<u>Released Parties</u>") from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties may have or which may hereafter be asserted or accrue against Released Parties, or any of them, resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, arising directly or indirectly out of the Loan, the Loan Documents, the transactions evidenced or contemplated thereby, the approval, the origination,

DocuSign Envelope ID: 2:23-bk-17901-VZ    Doc 24

the funding and the closing of the Loan; the review, approval, or disapproval of any and all documents, instruments, insurance and all other items submitted to Lender in connection with the Loan; the disbursements of funds under the Loan; the modification of the Loan made pursuant to this Agreement; Lender's acts, statements, conduct, representations and omissions made in connection with the modification of the Loan, including, without limitation, the terms and conditions of this Agreement; any fact, matter, transaction or event relating thereto; or the relationships existing or transactions or dealings occurring between Lender and Releasing Parties up to and as of the date of this Agreement (the "Claims").

b.  The release described in the immediately preceding paragraph and in this paragraph applies to all Claims which the Releasing Parties have or which may hereafter arise against the Released Parties, or any of them, as a result of acts or omissions occurring before the date of this Agreement, whether or not known or suspected by the Parties hereto. Releasing Parties expressly acknowledge that, although it may be that ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, it has carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or Claims.

c.  Without limiting the generality of the foregoing, Releasing Parties expressly waive any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the releasing party does not know or suspect to exist in the releasing party's favor at the time of executing the release, which if known by the releasing party must have materially affected the releasing party's settlement with the released party. Further, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542, and any ordinances or statutory, regulatory, or judicially created laws or rules of any applicable jurisdiction which may provide, in substantive part, that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

_____ (INITIALS)

d.  This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released. Releasing Parties hereby acknowledge that it has not relied upon any representation of any kind made by Lender in making the foregoing release.

9.  **This Agreement One of the Loan Documents**. From and after the date hereof, this Agreement is and shall be deemed one of the Loan Documents. An event of default under this Agreement shall constitute an event of default under the Note and the other Loan Documents.

10. **Termination**. Either party may terminate this Agreement upon written notice of termination to the other party at the address provided for in the Loan Documents. Upon termination of this Agreement, all payments due and owing under the Note shall revert back to the payment terms in effect directly prior to the Payment Deferral Period and Borrower shall remain obligated for payment of any and all fees, costs and/or expenses incurred by Lender in connection with this Agreement as provided above.

11. **General.** Borrower shall execute such additional documents as Lender may require to fully effectuate the intent of this Agreement. If any action, suit or other proceeding is brought to enforce the obligations of Borrower under this Agreement, Lender shall be entitled to receive all of its costs and expenses of suit, including attorneys' fees, incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom. As used in this Agreement, attorneys' fees shall mean the full and actual cost of any legal services actually performed in connection with the matters involved, calculated on the basis of the usual fee charged by the attorneys performing such services, and may also include the allocable fees and costs of in-house counsel, and shall not be limited to "reasonable attorneys' fees" as defined in any statute or rule of court. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California (however, not to the exclusion of any applicable Federal law), without regard to state statutes or judicial decisions regarding choice of law questions.

12. **Counterparts.** This document may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of a signature page to, or an executed counterpart of, this document by facsimile, email transmission of a scanned image, DocuSign, or other electronic means, shall be effective as delivery of an originally executed counterpart. The words "execution," "signed," "signature," and words of like import in this document shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity, or enforceability as a manually executed signature or the use of a paper-based record keeping system, as the case may be, to the extent and as provided for in any applicable law, including, without limitation, Electronic Signatures in Global and National Commerce Act, the California Uniform Electronic Transaction Act any other similar state laws based on the Uniform Electronic Transactions Act or the Uniform Commercial Code, and the parties hereto hereby waive any objection to the contrary.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND BORROWER AGREES TO THE TERMS OF THIS AGREEMENT.**

**BORROWER:**

DocuSigned by:

*Linda Veerkamp*          8/31/2020

X _____
C684A500FC40437...

**Linda Veerkamp**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2522 Chambers Road, Tustin, CA 92780

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _02/06/2024_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _02/06/2024_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Veerkamp, Linda M
18320 Regina Ave
Torrance, CA 90504

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/06/2024 | Ronald Appel, Esq. | |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Junior Lienholder

Ronald Pearlstein Profit Sharing
Plan Entrust #00393
c/o Danco
2476 Overland Ave., Suite 203
Los Angeles, CA 90064